UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:19-cr-134-SDM-CPT
                 8:20-cv-2828-SDM-CPT

ALAN SANCHEZ FOURCADE
_____

**ORDER**

Alan Sanchez Fourcade moves under 28 U.S.C. § 2255 to vacate his conviction and sentence for conspiring to possess with intent to distribute cocaine while aboard a vessel subject to the jurisdiction of the United States, for which he is imprisoned for 188 months. Sanchez claims the indictment is defective, the district court lacks jurisdiction, and his sentence is unreasonable. He is entitled to no relief because his claims are meritless and not cognizable.

### I. BACKGROUND

Under a plea agreement Sanchez pleaded guilty to a conspiracy to possess with the intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States in violation of 21 U.S.C. § 960(b)(1)(B)(ii) and 46 U.S.C. §§ 70503(a) and 70506(a) and (b). Before Sanchez pleaded guilty the United States notified Sanchez that he faced an enhanced penalty because of his prior federal felony drug convictions.

Sanchez admitted to the following facts that support his guilty plea (Crim.

Doc. 64 at 20–22):

> On or about March 13, 2019, a military patrol aircraft (MPA) sighted a 40-foot go-fast vessel (GFV), with a tarped deck, and three (3) outboard engines, in the international waters of the Eastern Pacific Ocean, approximately 840 nautical miles southwest of Manzanillo, Mexico. The U.S. Coast Guard Cutter (USCGC) WAESCHE, which was approximately 50 nautical miles from the GFV, diverted to intercept the vessel, and eventually launched its embarked helicopter and two small boats to pursue the vessel. As soon as the helicopter arrived on scene and went overt, the GFV jettisoned suspected contraband and then increased its speed and began evasive maneuvers. Eventually the GFV was disabled by the helicopter after failing to comply with its requests to stop. After the GFV was dead in the water, the crew began to jettison packages of suspected contraband. The MPA and helicopter observed and recorded the jettison.
>
> Once on scene, one of the small boats gained positive control of the GFV, and the embarked law enforcement boarding team conducted a right of visit (ROV) boarding to determine the nationality, if any, of the subject vessel. The defendant, Alan Sanchez-Fourcade, and his codefendants . . . were the four (4) crewmembers of the GFV. During the ROV boarding, all four (4) defendants denied being the master of the vessel. However, [a] codefendant . . . made a verbal claim of Mexican nationality for the GFV and claimed a last port of call of Sinaloa, Mexico. The GFV was not flying a flag, had no registration numbers, no vessel name, and no other indicia of nationality.
>
> Pursuant to the United States-Mexican Operational Procedures, the U.S. Coast Guard approached the Government of Mexico and requested confirmation of the registry and nationality of the subject GFV. The Mexican Government responded that it could neither confirm nor deny the nationality of the subject vessel. Therefore and in accordance with 46 U.S.C. § 70502(c)(1)(A) and (d)(1)(C), the U.S. Coast Guard treated the GFV as one without nationality and therefore a vessel subject to the jurisdiction of the United States. At the time of interdiction by the Coast Guard, the GFV was seaward of the territorial seas of any nation and in international waters.
>
> Thereafter, the Coast Guard boarding team conducted a law enforcement boarding of the subject vessel. During the course of this boarding, the boarding team observed approximately 39 fuel barrels and 20 bales of suspected

> contraband in plain view on the deck of the GFV. The USCG also retrieved several additional bales of suspected contraband from the water that were previously jettisoned by the GFV crew. The boarding team conducted two (2) NIK field tests on the suspected contraband, both of which tested positive for cocaine. In total, the USCG seized 32 bales of cocaine with an at-sea weight of approximately 1603 kilograms.
>
> The defendant, Alan Sanchez-Fourcade, willingly agreed to transport approximately 1603 kilograms of cocaine aboard the GFV with his codefendants and others. The purpose of this agreement was to smuggle this cocaine into Mexico through international waters and distribute the cocaine to other persons. The defendant knew that the bales onboard the GFV and seized by the U.S. Coast Guard contained five (5) or more kilograms of cocaine and knew that the planned voyage was a drug smuggling venture.

The presentence report calculates an advisory guidelines range of 210 to 262 months. (Crim. Doc. 111 at ¶ 68) Because of his prior federal drug convictions, Sanchez faced an enhanced minimum term of 15 years and a maximum term of life in prison. (*Id*. at ¶ 67) At sentencing Sanchez objected to neither the presentence report's factual accuracy nor its guidelines calculation. (Crim. Doc. 149 at 4) Citing Sanchez's advanced age and the unlikelihood that he would repeat criminal conduct, the district court granted Sanchez's request for a downward variance and sentenced him to 188 months. (Crim. Doc. 115 at 3) In accord with the waiver in his plea agreement of his right to appeal, Sanchez filed no appeal.

Sanchez now moves to vacate his conviction and sentence and raises three grounds for relief.[1] Although Sanchez waived his grounds, his grounds are meritless

---

[1] Neither a claim of ineffective assistance of counsel nor a challenge to the voluntary nature of Sanchez's guilty plea are properly before the district court. Without any explanation, Sanchez complains that he "lacked adequate representation of competent counsel" and he "was not represented by competent counsel." (Civ. Doc. 5 at 4, 6, 8). And, he generally sets forth legal
(continued…)

and not cognizable. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."); *Garrison v. United States*, 73 F.4th 1354, 1359 n.9 (11th Cir. 2023) (same).

## II.   GROUND ONE

Sanchez claims that the indictment is defective and violative of due process because it fails to notify him of the nature of the charged conspiracy. (Civ. Doc. 5 at 4–5; Civ. Doc. 6 at 4–6) He asserts that the indictment is "factually barren" and lacks specific allegations of "time, dates, places and people involved" in the charged conspiracy. (Crim. Doc. 6 at 4)

The indictment charges Sanchez with conspiring to possess with the intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. § 70503(a), *et seq*. (Crim. Doc. 1 at 1) The indictment sufficiently notifies Sanchez of the charged conspiracy by specifically citing the MDLEA as the statute violated. *See United States v. Persaud*, 605 F. App'x 791, 797

---

principles governing a claim of ineffective assistance of counsel. (Civ. Doc. 6 at 1–2) In one sentence, Sanchez generally complains that "a guilty plea cannot be voluntary unless the defendant received real notice of the true nature of the charge against him." (Civ. Doc. 6 at 6) However, these vague complaints and general statements of legal principles are insufficient to properly raise claims of ineffective assistance of counsel or an involuntary guilty plea. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient."); *Walker v. Dugger*, 860 F.2d 1010, 1011 (11th Cir. 1988) (explaining that a *pro se* litigant's mere discussion of a superficial claim does not give an opposing party fair notice of that claim); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (explaining that a petitioner is not entitled to an evidentiary hearing "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible") (citations omitted).

- 4 -

(11th Cir. 2015) (concluding that an indictment citing the MDLEA "adequately informed [the defendant] of the legal basis for the charges"); *United States v. Pena*, 684 F.3d 1137, 1147 (11th Cir. 2012) (quotations omitted) ("If an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge."). Furthermore, the circuit court has repeatedly rejected due process challenges to the MDLEA. *United States v. Campbell*, 743 F.3d 802, 812 (11th Cir. 2014) ("[T]he Due Process Clause of the Fifth Amendment does not prohibit the trial and conviction of an alien captured on the high seas while drug trafficking, because the [MDLEA] provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas."); *United States v. Cruickshank*, 837 F.3d 1182, 1188 (11th Cir. 2016) (same).

### III.  GROUND TWO

Sanchez claims that the district court lacks jurisdiction because the MDLEA is an "extraterritorial application of U.S. law." (Civ. Doc. 5 at 5–6; Civ. Doc. 6 at 6–12)  He asserts that that the charged conspiracy lacked any "nexus" to the United States.  (Civ. Doc. 6 at 6–8)

Eleventh Circuit precedent forecloses this claim.  "[C]onduct proscribed by the [MDLEA] need not have a nexus to the United States because universal and protective principles support its extraterritorial reach." *Campbell*, 743 F.3d at 810. "[T]he protective principle does not require that there be proof of an actual or intended effect inside the United States."  743 F.3d at 810 (quotations omitted); *see also United States v. Cabezas-Montano,* 949 F.3d 567, 587 (11th Cir. 2020) ("[T]his

Court has held that the MDLEA is a valid exercise of Congress's power under the Felonies Clause as applied to drug trafficking crimes without a 'nexus' to the United States."); *United States v. Hernandez*, 864 F.3d 1292, 1303 (11th Cir. 2017) ("[T]he MDLEA [i]s a constitutional exercise of Congressional authority under the Felonies Clause, and . . . the conduct proscribed by the MDLEA need not have a nexus to the United States."). Furthermore, the indictment charging Sanchez with violating the MDLEA establishes the district court's jurisdiction. *Alikhani v. United States*, 200 F.3d 732, 734–35 (11th Cir. 2000) (because 18 U.S.C. § 3231 provides the district courts with jurisdiction over "all offenses against the laws of the United States," an indictment that charges a federal crime establishes the district court's jurisdiction).

## IV.   GROUND THREE

Sanchez claims that his 188-month sentence is procedurally unreasonable because he was entitled to a reduced sentence under First Step Act of 2018. (Civ. Doc. 5 at 7; Civ. Doc. 6 at 12–13) The First Step Act "provides . . . that the district court that originally sentenced a criminal defendant . . . may, if certain conditions obtain, 'impose a reduced sentence.'" *United States v. Edwards*, 997 F.3d 1115, 1116 (11th Cir. 2021) (quoting First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018)).

Sanchez's claim is not cognizable in a Section 2255 motion. *See Mackey v. United States*, No. 21-13094, 2022 WL 17830252, at *2 (11th Cir. Dec. 21, 2022) ("[T]he proper vehicle to bring [defendant's claims under the First Step Act] was in a motion under 18 U.S.C. § 3582(c), not § 2255."). "Section 2255 does not provide a

remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (*en banc*). When a prisoner claims that his "sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack," 28 U.S.C. § 2255(a), a district court lacks authority to grant relief "unless the claimed error constitute[s] 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Spencer*, 773 F.3d at 1138 (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). "When a federal prisoner, sentenced below the statutory maximum, complains of a sentencing error and does not prove either actual innocence of his crime or the vacatur of a prior conviction, the prisoner cannot satisfy the demanding standard that a sentencing error resulted in a complete miscarriage of justice." 773 F.3d at 1139. A guidelines miscalculation cannot be a complete miscarriage of justice because the guidelines are advisory. 773 F.3d at 1140.

Sanchez claims his sentence is procedurally unreasonable because he did not receive a reduced sentence under the First Step Act. He claims neither actual innocence of his offense of conviction nor vacatur of a prior conviction used to enhance his sentence. Therefore, because he was sentenced below the statutory maximum of life imprisonment, he cannot show that any sentencing error resulted in a complete miscarriage of justice.

Sanchez's Section 2255 motion is **DENIED**. The clerk is directed to enter a judgment against Sanchez, close this case, and enter a copy of this order in the criminal case.

## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL IN FORMA PAUPERIS

Sanchez is not entitled to a certificate of appealability ("COA"). A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Sanchez must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues she seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Sanchez is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Sanchez must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on December 13th, 2023.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE